## THE CITY OF PUEBLA.

PUGET SOUND TUGBOAT CO. v. THE CITY OF PUEBLA.

(District Court, D. Washington, N. D. April 3, 1897.)

SALVAGE SERVICES—COMPENSATION.

Services of a tug in going to the rescue of a disabled passenger and freight steamer, drifting, in stormy weather, with the wind and current, towards dangerous rocks, and towing her into port, *held* a salvage service, for which there should be awarded to owners, master, and crew of the tug $13,500 on a total valuation of $343,000, it appearing that the service lasted 30 hours, and involved considerable danger and risk, as shown by the breaking and loss of a large steel hawser.

In Admiralty. Libel in rem against the steamship City of Puebla by the Puget Sound Tugboat Company, a corporation, owner of the steam tug Wanderer, for itself and in behalf of the officers and crew of said steam tug, for salvage. Findings and decree for libelant.

Struve, Allen, Hughes & McMicken, for libelant.
A. F. Burleigh and S. H. Piles, for claimant.

HANFORD, District Judge. In the month of March, 1894, the steamship City of Puebla, while on a voyage with passengers and cargo of general merchandise from the ports of Puget Sound and Victoria to San Francisco, at a place on the Pacific Ocean, about 50 miles from the entrance to the Straits of Juan de Fuca, and about 20 miles southwest of Destruction Island, suffered a mishap by the breaking of a crank pin, depriving her of the use of her propelling machinery. The weather was stormy and threatening, and the vessel, thus disabled, was unable to proceed on her voyage, or to keep steerageway on any course, but drifted, with the wind and current, northward towards Flattery Rocks. With the utmost skill of her able commander and officers, with such sails as they were able to use, nothing could be done for the safety of the vessel, except by putting out a drag to lessen the rapidity with which she otherwise would have drifted into extreme danger. When in this situation, the first officer, with a boat's crew, volunteered to go in a small boat to the telegraph station on Tatoosh Island, with a message for assistance. On account of the heavy sea and the surf beating upon the island, the boat was unable to effect a landing. The men had become nearly exhausted from hard work and exposure, when, on the next day, the boat was picked up by the steam tug Wanderer, while towing a vessel outward. After running into Neah Bay for the purpose of telegraphing for assistance, the Wanderer proceeded to the relief of the disabled ship, and on the way she was met by the steamship Costa Rica, which gave the approximate position of the Puebla at the time. At this time the weather was squally and thick, snow was falling, and the sea was running high. To reach the ship by the most direct course, the Wanderer had to run head to the sea, and plow the waves, which

continually broke over her, flooding her decks, thereby exposing her crew to hardships and peril. It was about 4 o'clock in the afternoon when she reached the City of Puebla, and then a new 11-inch manilla hawser with a 4½-inch steel wire pennant was quickly sent on board, and made fast. When the tugboat commenced to draw on her hawser, the high-rolling billows intervening between her and the City of Puebla caused such tremendous strain upon the hawser that it parted near the rail of the tugboat, and, owing to a misunderstanding on the part of the officers of the Puebla, it was cast loose from the steamship, and lost. In a short time the tug succeeded in sending another hawser aboard the ship, and also in taking a hawser from the ship, shackled to one of her anchor chains, and by means of the double lines thus made fast from one vessel to the other the tug was able to pull the ship around, and tow her into the Straits. The tug Tacoma, which had been dispatched by the libelant, in response to the telegram sent from Neah Bay, met the vessels in the Straits, and sent a hawser on board the Puebla, and assisted the Wanderer in towing her to Port Townsend.

It is maintained on the part of the claimant that the City of Puebla was not in a situation of imminent peril, and that the tugboats, in towing her to Port Townsend, performed only the usual services in which they are ordinarily employed, and for which they are constantly open to contract. But I must regard the situation of a large passenger steamer, so disabled as to have no use of her propelling machinery, and without motive power sufficient to maintain steerageway, so near to a rocky coast, with wind and current setting on, and in the most stormy season of the year, as being in a situation of extreme peril; and, in view of all the undisputed facts, it is my opinion that if the Wanderer had not reached the City of Puebla in time to render assistance before dark that day it is probable, if not inevitable, that in spite of all efforts to save her on the part of her own officers and crew, and the attempts of other vessels, she would have drifted upon the rocks, and become a total wreck, before daylight the next morning. It is true that the Wanderer and the Tacoma are built and equipped for towing large vessels in and out of the Straits of Juan de Fuca, and their business is to perform such services under contract; nevertheless the rescue of the City of Puebla was a salvage service, rendered with promptness and skill, and in the case of the Wanderer more than ordinary dangers were braved by her officers and crew, which, in my judgment, entitle them to share in the compensation to be awarded. The time from the commencement of the service until the disabled ship was moored at Port Townsend was about 30 hours. The value of the Wanderer at that time was $65,000, and she lost a new hawser, worth $550. The value of the City of Puebla was at that time $275,000, and the value of her cargo and freight was about $68,000. Taking into account all the circumstances showing merit on the part of the salvors and benefit to the claimant, I consider the following sums to be just and reason-

able compensation:. To the libelant, for all services rendered by its tugboats, and losses sustained, $13,500. To Charles T. Bailey, master of the Wanderer, $1,000. To Charles T. Manter, mate, and E. W. Deickhoff, chief engineer, each $600. To R. H. Ellis, assistant engineer, $400. To the cabin boy, $50. And to each of the other eight employés on board the Wanderer, $100. Let there be a decree directing payment of the above sums, with interest thereon at the rate of 7 per cent. per annum from the date of filing the libel, and costs.